1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

TIMOTHY J. VAN WINKLE,

                    Plaintiff,

     v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                  Defendant.

Case No. 3:12-cv-012-5434-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16
17
18

      Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be affirmed.

19
20
21
22
23
24
25
26

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      On November 24, 2008, plaintiff filed an application for disability insurance benefits,

alleging disability as of December 12, 2007, due to back problems, as well as problems with

concentrating and remembering instructions. <u>See</u> Administrative Record ("AR") 19, 140, 177.

That application was denied upon initial administrative review on January 6, 2009, and on

reconsideration on April 9, 2009. <u>See</u> AR 19, 69, 76.  A hearing was held before an

administrative law judge ("ALJ") on June 8, 2010, at which plaintiff, represented by counsel,

ORDER - 1

1    appeared and testified, as did a vocational expert. See AR 32-66.

2         In a decision dated September 16, 2010, the ALJ determined plaintiff to be not disabled.

3    See AR 19-27.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals

4    Council on April 6, 2012, making the ALJ's decision defendant's final decision. See AR 1; see

5    also 20 C.F.R. § 404.981.  On May 16, 2012, plaintiff filed a complaint in this Court seeking

6    judicial review of defendant's decision. See ECF #1.  The administrative record was filed with

7    the Court on July 24, 2012. See ECF #10.  The parties have completed their briefing, and thus

8    this matter is now ripe for the Court's review.

9         Plaintiff argues defendant's decision should be reversed and remanded for an award of

10   benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1)

11   in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; and (3)

12   in assessing his residual functional capacity.  For the reasons set forth below, however, the Court

13   disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that

14   defendant's decision should be affirmed.

15                                          DISCUSSION

16        The determination of the Commissioner of Social Security (the "Commissioner") that a

17   claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

18   applied by the Commissioner, and the "substantial evidence in the record as a whole supports"

19   that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

20   Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

21   772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

22   nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

23   and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d

ORDER - 2

432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v.

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

1    Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

2    whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

3    all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

4    within this responsibility." Id. at 603.

5          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

6    "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

7    "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

8    stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

9    "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

10   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

11   F.2d 747, 755, (9th Cir. 1989).

12         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

13   opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

14   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

15   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

16   the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

17   or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

18   (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

19   evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

20   Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

21         In general, more weight is given to a treating physician's opinion than to the opinions of

22   those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

23   not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

ORDER - 4

1   inadequately supported by clinical findings" or "by the record as a whole." Batson v.

2   Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

3   Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

4   2001).   An examining physician's opinion is "entitled to greater weight than the opinion of a

5   nonexamining physician." Lester, 81 F.3d at 830-31.   A non-examining physician's opinion may

6   constitute substantial evidence if "it is consistent with other independent evidence in the record."

7   Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

8

9        With respect to the medical evidence in the record, the ALJ found in relevant part:

10

11   The claimant also has reported a history of back pain.  An MRI in FeBruary
    2008 showed that he had only mild degenerative changes in the lumbar spine,
12   without stenosis or other evidence of neural compromise (exhibit 1F:9).
    Consistent with those mild findings, Christopher Merrifield, M.D., examined
13   the claimant for his pain in March 2008, and noted that he had good range of
    motion, intact motor function in all extremities, and only mild tenderness.  Dr.
14   Merrifield then gave the claimant a series of epidural injections with reported
    improvement in functioning; he observed that the claimant could easily rise
15   form a seated to standing position and ambulate without difficulty.  Dr.
    Merrified also noted that the claimant was obese, standing 6'2" tall and
16   weighing 350 pounds (exhibit 1F).  These reports show that the claimant was
    able to function pretty well, including standing and walking, despite
17   degenerative disc disease and obesity.

18   Concurrent with Dr. Merrifield's treatment, the claimant attended physical
    therapy at Kitsap Physical Therapy.  There, he had some improvement; his
19   obesity was a problem that added to his symptoms (exhibit 2F).  The claimant
    was also treated by Marc Suffis, M.D.  On February 19, 2008, Dr. Suffis
20   found the claimant "unfit for duty" due to a lumbar strain, but his examination
    showed intact motor and sensation function, negative straight leg raise, and
21   normal gait and posture (exhibit 4F:21-24).  Those findings suggest the
    claimant was functioning well, consistent with the findings by Dr. Merrified
22   and contradicting the statement that he is unfit for work.

23   Dr. Suffis proceeded to find the claimant capable of light work, on a part-time
24   basis (exhibit 4F:20).  The claimant continued to report back pain and he
    attended a course of water therapy.  Dr. Suffis repeated his assessment that the
25   claimant was capable of only limited/part-time light work, but reports show
    that the claimant had intact gait, normal motor and sensation, "fairly normal"
26   range of motion, and negative straight leg raise (exhibit 4F:8-19).  In July

2008 the claimant reported increased back pain: he had greater limitation in lumbar flexion and appeared to have developed some positive straight leg raise on sitting. However, imaging showed no changes and the claimant's back degenerative changes remained mild (exhibit 4F:4-7). These findings do not support the degree of back pain that the claimant has alleged. That suggests a degree of exaggeration in his alleged symptoms, consistent with some evidence of pain behavior (exhibit 4F:7) notwithstanding his rather mild physical findings.

Mikhail Makovski, M.D., performed [a Washington State Department of Labor and Industries] examination in September 2008. The claimant presented weighing 348 pounds. He had normal ambulation and gait, negative straight leg raise while seated and only slight pain while supine, and normal muscle strength. There was some patchy sensory loss in the bilateral thighs. Dr. Makovski diagnosed a lumbosacral strain without objective findings of any muscular or neurological impairment, and opined that the claimant had no vocational restrictions (exhibit 5F). This assessment is considered, and the findings (or lack thereof) are consistent with other reports. However, the claimant's demonstrated degenerative changes may have some relationship to his back complaints, and he no doubt has some functional limitations imposed by back pain and obesity.

AR 24. Plaintiff argues the ALJ erred in so finding. The Court disagrees.

First, plaintiff argues the ALJ erred in relying more on the opinion of Dr. Merrifield and the findings of Dr. Majovski, than the opinions of Dr. Suffis and "the [United States Department of Veterans Affairs] VA medical providers, whom [he] saw on an ongoing basis over a period of years for all of his health concerns." ECF #13, p. 5. As to the opinions of the VA providers, plaintiff has not pointed to any specific such provider in the record the ALJ failed to properly consider, let alone what that provider's opinion may or may not have been, particularly on the issue of work-related limitatoins. As such, plaintiff has not sufficiently argued this issue.[2] In addition, it is not error to prefer the opinion of an examining physician over that of a treating physician, where the former is supported by the examining physician's own objective clinical

---

[2] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

findings – even if resulting from as few as one or two evaluations – and the latter is not. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings).

Indeed, as noted by the ALJ, Dr. Suffis's clinical findings are for the most part fairly unremarkable, and thus do not support that physician's opinions regarding plaintiff's inability to perform full-time work. See *219-21*, *223*, *226*, *257-58*, *260*, *262*, *264*, *266*, *269, 272-74*; see also Batson, 359 F.3d at 1195.  Plaintiff takes issue with the fact that the findings the ALJ focuses on are from 2008.  But Dr. Suffis's opinions are from the same time period. See AR 254, 263, 268, 270-71.  Further, although plaintiff asserts subsequent medical records indicate the presence of "more progressive symptoms" (see ECF #13, p. 5 (citing AR 358, 690, 694)), those findings do not by themselves establish the existence of actual work-related limitations, let alone limitations that would support the level of restriction assessed by Dr. Suffis. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.").

Plaintiff also takes issue with the fact that neither Dr. Makovski nor Dr. Merrifield found he had bilateral carpal tunnel syndrome, although there is medical evidence in the record that is suggestive thereof. See ECF #13, p. 5 (citing AR 694).  Even if there is evidence suggestive of that impairment, however, plaintiff again fails to point to any objective medical evidence in the record establishing the existence of work-related limitations stemming therefrom. See Matthews, 10 F.3d at 680.  Plaintiff finds fault as well with Dr. Makovski's evaluation report in particular, because that report contains no evaluation of the impact of his diabetes, sleep apnea, obesity, carpal tunnel syndrome, depression or posttraumatic stress disorder.  But as discussed above and elsewhere below, plaintiff has failed to show these alleged impairments have resulted in work-

ORDER - 7

related limitations more severe than those found by the ALJ.

It is true that Dr. Merrifield did not address any of plaintiff's alleged conditions other than his back problems, and that he did not render an opinion regarding his ability to work. See AR 209-13, 216-17.  But once more plaintiff has not presented evidence showing those other conditions have resulted in significant work-related limitations not properly taken into account by the ALJ's own assessment.  Nor does the fact that Dr. Merrifield did not render a specific opinion regarding the ability to work take away from the propriety of the ALJ's evaluation thereof, given that the ALJ merely relied on Dr. Merrifield's clinical findings to show the weight of the objective medical evidence in the record supported a determination that plaintiff still could "function pretty well." AR 24.  Accordingly, the Court finds no error in the ALJ's treatment of the above medical opinion source evidence.

Plaintiff argues in addition that the ALJ did "not fully weigh the effects of [his] obesity on his condition, especially as to how it *may* increase his pain levels." ECF #13, p. 9 (emphasis added).  But the issue is not whether the medical evidence in the record can or may increase his pain levels or otherwise affect his functioning, but whether it in fact *does* show such an impact. Once again, plaintiff does not point to any objective medical evidence in the record that such an impact has occurred in this case beyond what the ALJ found.  Thus, while it may be that there are findings of obesity and other potentially related symptoms, such as high blood pressure (see ECF #13, p. 9 (citing AR 429)) in the record, as discussed previously, the mere existence of an impairment – or symptoms related thereto – is insufficient to establish the presence of significant work-related limitations, let alone a finding of disability.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

ORDER - 8

642.  The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. <u>See id.</u> at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

<u>Tonapetyan</u> , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see also</u>

<u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of

malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. <u>See id.</u>

The ALJ in this case discounted plaintiff's credibility in part on the basis that the medical

evidence in the record does not support his statements concerning the severity of his symptoms

and other subjective complaints. <u>See</u> AR 24-25.  A determination that a claimant's complaints

are "inconsistent with clinical observations" can satisfy the clear and convincing requirement.

ORDER - 9

Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  As discussed above, the ALJ did not err in evaluating the medical evidence in the record or in finding it supported limitations less severe than those indicative of a disabling condition, and thus he also did not err in discounting plaintiff's credibility on this basis.

It is true as plaintiff asserts that a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  The same is true with respect to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while Bunnell was couched in terms of subjective complaints of pain, its reasoning extended to non-pain complaints as well).  Here, though, the ALJ provided other valid reasons for discounting plaintiff's credibility.[3]

For example, the ALJ discounted plaintiff's credibility also in part due to medical improvement. See AR 25; see also Morgan, 169 F.3d at 599; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).   The ALJ further discounted plaintiff's credibility because:

> The claimant said that his workers' compensation had ended and he received unemployment.  In order to qualify for unemployment benefits, applicants must typically affirm that they are capable of working.  Thus, the claimant apparently claimed an ability to work when applying for one form of government benefits, while currently alleging an inability to work during the same period.  At the hearing, the claimant admitted that he had to certify that he was looking for work; in his mind this was accomplished by going to [the Washington State Department of Vocational Rehabilitation] DVR. Interestingly, the claimant said that he had advised the unemployment office of his limitations and they still allowed him to go on unemployment benefits,

---

[3] As such, inconsistency with the medical evidence is a valid basis for discounting plaintiff's subjective complaints regarding his back impairment and alleged carpal tunnel syndrome, given that as discussed above, that evidence fails to establish greater functional limitations than those the ALJ found the record supported.

> suggesting that another agency finds his impairments not disabling.  The
> claimant has been to DVR and VA vocational rehabilitation.  He is currently
> suspended from those services because of his CTS problems and surgery, but
> he indicated that he would re-engage with these services and perhaps return to
> school.  That suggests that he believes he is capable of working.

AR 25-26; see Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (noting ALJ gave specific

reasons for rejecting claimant's credibility, including his receipt of unemployment benefits,

indicating he apparently considered himself capable of work and holding himself out as being

available therefor).  Plaintiff argues the fact that he sought vocational rehabilitation services does

not adversely impact his credibility, as merely wanted to provide for his family.  But given that

plaintiff admitted to originally attending such services for the purpose of certifying his ability to

look for work, the ALJ's interpretation of plaintiff's stated intention to re-engage therewith is not

unreasonable in this context.

      The Court agrees the ALJ erred in discounting plaintiff's credibility in part on the basis

of his activities of daily living, as those activities do not necessarily show he was capable of

performing household chores for a substantial part of the day or other activities transferable to a

work setting.  See AR 25; Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Smolen, 80 F.3d at

1284 n.7.  Nor do those listed activities necessarily contradict plaintiff's "other testimony." Orn,

495 F.3d at 639.  The Court also finds the ALJ erred in finding in relevant part:

> . . . [Plaintiff] apparently sees a psychiatrist only as needed, but he testified
> that his only regular treatment is a meditation class.  That suggests no severe
> mental impairment . . .

AR 25.  While failure to pursue more aggressive or consistent treatment can be a valid reason for

finding a claimant to be not fully credible,[4] here as the ALJ himself noted, plaintiff also was

---

[4] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's

ORDER - 11

1   being treated with medication for his mental health condition. See AR 25.  Given that the ALJ

2   also found medication resulted in significant improvement in that condition (see id.), it is not at

3   all clear that additional treatment was necessary or would be more effective, and thus the ALJ

4   erred in relying on this reason to discount plaintiff's credibility.

5          That being said, while clearly not all of the ALJ's stated reasons for finding plaintiff to be

6   less than fully credibility are proper, he did provide at least three valid reasons for so finding,

7   and therefore his credibility determination is supported by substantial evidence in the record. See

8   Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d

9

10  1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's

11  credibility, he presented other valid, independent bases for doing so, each with "ample support in

12  the record").  Accordingly, overall the Court finds the ALJ did not err in discounting plaintiff's

13  credibility in this case.

14  III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

15         Defendant employs a five-step "sequential evaluation process" to determine whether a

16  claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled

17  at any particular step thereof, the disability determination is made at that step, and the sequential

18  evaluation process ends. See id.  If a disability determination "cannot be made on the basis of

19  medical factors alone at step three of that process," the ALJ must identify the claimant's

20  "functional limitations and restrictions" and assess his or her "remaining capacities for work-

21  related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity

22  ("RFC") assessment is used at step four to determine whether he or she can do his or her past

23

24

25

26  failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428,
    1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower
    level of pain and functional limitation).

    ORDER - 12

relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . except: he can stand/walk up to 30 minutes at a time.  He can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds.  He should avoid working with vibrating tools and machines, and avoid hazardous working conditions such a proximity to unprotected heights and moving machinery.  He is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes.**

AR 23 (emphasis added).  Plaintiff argues the ALJ erred in assessing his RFC here by failing to take into consideration "the full effects of his bilateral carpal tunnel syndrome." ECF #13, p. 10. But plaintiff does not explain what those "full effects" are.  Nor, as discussed above, does he point to evidence in the record demonstrating that he has significant work-related limitations stemming from that alleged impairment that are more severe than those the ALJ assessed.  As such, the ALJ did not err in failing to include any additional limitations resulting from his carpal tunnel syndrome in his assessment of his residual functional capacity.

Nor does the record support inclusion of additional limitations due to sleep apnea, given

ORDER - 13

that as noted by the ALJ, plaintiff's symptoms were improved with treatment. See AR 25.[5]  The Court also finds no error on the part of the ALJ in the alleged failure to properly consider and address all the VA medical opinions in the record, since as previously discussed, plaintiff fails to point to any specific such opinion in the record that the ALJ failed to address and that establishes the existence of more restrictive work-related limitations than the ALJ found.  The same is true in regard to plaintiff's obesity.  That is, despite the presence of that condition in the record, plaintiff has failed to link any specific work-related limitations thereto that the ALJ's residual functional capacity assessment does not include.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 27th day of February, 2013.


Karen L. Strombom
United States Magistrate Judge

---

[5] Plaintiff takes issue with the ALJ's finding here, pointing to his testimony that he was tired and had to lay down each day to take a nap due to difficulties he was having with his CPAP. See AR 48-49.  But plaintiff reported in mid-January 2009, that he was "very happy" with a recent tonsillectomy, and that "his sleep and sleepiness is much improved, and that he no longer snores." AR 651.  Given that the ALJ properly discounted plaintiff's credibility, in part on this basis as well as for the other valid reasons discussed above, and that plaintiff has pointed to no medical evidence in the record establishing the existence of work-related limitations stemming from his sleep apnea, the ALJ did not err in declining to include any such limitations related thereto in his RFC assessment.

ORDER - 14